IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JEFFREY D. CHAMBERS,              )
                                  )
              Plaintiff,          )
                                  )
     v.                           )   Case No.13-1410-RDR
                                  )
TIMOTHY A. FIKE;                  )
CRETE CARRIER CORPORATION,        )
                                  )
              Defendants.         )
_____ _
```

**MEMORANDUM AND ORDER**

On October 31, 2011, plaintiff was involved in a vehicular accident with a truck owned by defendant Crete Carrier Corporation and driven by defendant Timothy Fike, a Crete employee at the time of the accident. Plaintiff filed this lawsuit alleging injuries, loss of income, and other damages caused by the negligence of the driver working for Crete. It is agreed that Crete is vicariously liable for the negligence of its driver. Doc. No. 85, p. 2. Part of plaintiff's damages claim is $981,000.00 for lost income and earning capacity. Doc. No. 85, p. 3.

This case is now before the court upon defendant Crete's motion for partial summary judgment and its motion to exclude the opinion testimony of Chet Buchman, an expert witness plaintiff has offered to support plaintiff's claims of economic

loss.[1]   Doc. Nos. 89 and 87.   The motion for partial summary judgment asks that the court grant defendants summary judgment against plaintiff's claims for lost income and earning capacity.

The arguments in the two motions overlap.   Some of the arguments relate to the legal question of whether plaintiff can make a damages claim for a loss defendant contends was suffered by plaintiff's <u>business</u>, which is a single-member LLC.   Other arguments relate to whether the testimony of plaintiff's expert is admissible on the issue of plaintiff's economic loss.

I.   PROCEDURAL STANDARDS

In order to warrant summary judgment, defendant must show that there is no genuine issue as to any material fact relating to the claim defendant argues should be dismissed as a matter of law.   FED.R.CIV.P. 56(a).   Defendant has the burden of identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.   <u>Lenox MacLaren Surgical Corp. v. Medtronic, Inc.</u>, 762 F.3d 1114, 1118 (10th Cir. 2014).   If that burden is met, plaintiff has the burden to set forth specific facts showing that there is a genuine issue for trial as to those matters for which plaintiff has the burden

---

[1] As a matter of docket housekeeping, the court shall rule as follows upon these related motions.   Plaintiff's motion for extension of time to file a response to defendant's motion to exclude testimony (Doc. No. 96) shall be granted.   Defendant Crete's motion for leave to file an amended memorandum in support of its motion to exclude testimony (Doc. No. 93) shall be granted. And, defendant Crete's motion for extension of time until November 17, 2014 to file the motion for partial summary judgment (Doc. No. 86) shall be granted.

of proof.  Travis v. Park City Mun. Corp., 565 F.3d 1252, 1258 (10th Cir.) cert. denied, 558 U.S. 956 (2009).

Defendant's motion to exclude is a motion in limine.  It challenges whether Buchman's testimony is relevant and reliable and admissible under FED.R.EVID. 702.  Plaintiff has the burden of showing that Buchman's proposed testimony meets these requirements and the court has considerable latitude in determining whether plaintiff has met this burden.  United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir.) cert. denied, 558 U.S. 815 (2009).  Motions in limine seek rulings in advance of trial which may save the parties and the court time and effort, as well as interruption of the trial.  See Mendelsohn v. Sprint/United Management Co., 587 F.Supp.2d 1201, 1208 (D.Kan. 2008).  It has been recognized in many cases that "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  Id.; see also, First Savings Bank v. U.S. Bancorp, 117 F.Supp.2d 1078, 1082 (D.Kan. 2000)("it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there").  It is also recognized that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."  Ohler v.

U.S., 529 U.S. 753, 758 n.3 (2000); see also, Wilkins v. Kmart
Corp., 487 F.Supp.2d 1216, 1219 (D.Kan. 2007).

The court will rule upon the issues raised by defendant's
motions as follows.

II.  PLAINTIFF MAY BRING A CLAIM FOR LOSS OF INCOME AT TRIAL.

Plaintiff is the single owner of the Smoky Valley Nursery
("SVN"), LLC.  This is a business which sells and plants trees
and performs landscaping work.  Plaintiff shows any income from
SVN on his tax returns as his own income.  But, SVN operates as
a separate legal entity from plaintiff.  Defendant asserts that
the loss of income alleged by plaintiff is actually income of
SVN.  Defendant also argues that plaintiff has no standing to
claim the alleged loss of income incurred by SVN.

In general, the law in Kansas provides that a jury may
award damages for economic loss, including lost income, shown by
the evidence.  P.I.K. Civil 4th § 171.02.  The loss must be the
natural and probable consequence of the wrongful act.  See Hale
v. Brown, 197 P.3d 438, 440 (Kan. 2008).  When faced with a
question similar to that raised by defendant in this case, Judge
Melgren of this district held that a single-member owner of a
LLC could not recover for his LLC's loss of profits resulting
from the owner's injuries in a vehicular accident, but that the
owner could claim damages for his own lost earnings or income.

<u>Greenburg v. Cure</u>, 2013 WL 1767792 *2-4 n.24 (D.Kan. 4/24/2013).[2]
Following this course, the court holds that plaintiff may not
recover for his LLC's lost profits, but that plaintiff may bring
a claim for lost income caused by defendants' negligence.   This
ruling does not foreclose the possibility that competent
evidence of SVN's lost profits or other business losses would be
admissible as proof of plaintiff's economic loss.

Defendant Crete also argues that plaintiff may not bring a
claim for the loss of trees caused after plaintiff's alleged
injuries prevented plaintiff from planting and caring for the
trees.   It appears undisputed that the trees at the nursery
belong to the LLC.   Plaintiff may not recover from defendants
for the alleged damage to this LLC property.   See <u>In re Tax
Exemption of Kouri Place, LLC</u>, 239 P.3d 96, 99 (Kan.App. 2010)(a
member of a LLC does not own the company's property); <u>JCM, LLC
v. Heinen Bros. Agra Services, Inc.</u>, 2013 WL 6480655 *4 (D.Kan.
12/10/2013)(LLC members have no ownership interest in LLC
property).   But, plaintiff may recover for <u>any</u> lost income which

---

[2] This holding appears consistent with the general rule applied in other
jurisdictions.   See, e.g., <u>Ewing v. Esterholt</u>, 684 P.2d 1053, 1060 (Mont.
1984)(testimony regarding subchapter S corporation's profits admissible in
personal injury action);   <u>Bova v. Gary</u>, 843 N.E.2d 952, 955-59 (Ind.App.
2006)(denying motion in limine seeking to bar plaintiff sole shareholder of S
corporation from offering evidence of lost profits); <u>Sezonov v. Wagner</u>, 654
N.E.2d 252, 255 (Ill.App. 1995)(evidence of corporation's lost profits
relevant to lost earnings of sole shareholder); see also <u>Reddy v. Chappelle</u>,
678 So.2d 195, 196 (Ala.App. 1996)(citing general rule that a plaintiff may
recover for lost profits of a business which are a product of plaintiff's
personal effort, skill or ability); <u>Hibler v. Nordyke</u>, 512 P.2d 485, 486
(Kan. 1973)(citing same general rule); <u>Defulvio v. Holst</u>, 414 A.2d 1087, 1090
(Pa.Super. 1979)(evidence of earnings from small partnership is admissible in
personal injury action).

is the natural and probable consequence of negligence for which defendants are responsible.   Consequently, it is possible that proof of damage to trees or reduction in tree inventory may be relevant to a plaintiff's claim of loss of earnings.   As explained later in this order, however, the court shall exclude plaintiff's expert's tree loss analysis as it relates to lost income.

Part of defendant's argument against plaintiff's claim for damages for the future value of SVN's trees relates to the proper measure of those damages.   Defendant suggests that damages incurred from the death of trees should be measured by their replacement cost.   Because it is unclear what the evidence will be regarding tree loss or how the evidence relates directly to plaintiff's income loss, the court will not attempt to decide this argument at this time.

III.   DEFENDANT'S   EVIDENTIARY   CHALLENGES   ARE   PARTIALLY MERITORIOUS, BUT DO NOT WARRANT SUMMARY JUDGMENT GIVEN THE RECORD BEFORE THE COURT.

A.   Defendant's arguments do not foreclose evidence supporting plaintiff's claim of lost income.

Defendant argues that the court should bar Buchman's proposed expert testimony.   It is possible, however, that plaintiff could support his claims of lost income without the testimony of Buchman.   Kuhl v. Atchison, Topeka & Santa Fe Ry. Co., 827 P.2d 1, 10 (Kan. 1992)(expert evidence is not required

to prove lost income); see also, <u>Hare v. Wendler</u>, 949 P.2d 1141, 1143 (Kan. 1997)(Kansas law does not require expert testimony on a claim for damages).  Defendant admits for the purposes of the motions before the court that plaintiff works fewer hours because of his injuries.  While defendant asserts that, aside from Buchman's testimony, plaintiff has no other proof of loss of income which satisfies a rational standard, this contention is not established in the statement of facts and other stipulations presented to the court.  Therefore, the court cannot say upon this record that, without Buchman's testimony, plaintiff's lost income claims must fail for lack of proof.

   B. <u>Daubert standards</u>

   Many of defendant's arguments are made in the framework of a <u>Daubert</u> challenge.  The standards applied to a <u>Daubert</u> challenge to expert testimony were recently reviewed by Judge Crabtree of this district in <u>State Farm Fire and Casualty Company v. Bell</u>, ___ F.Supp.2d ___, 2014 WL 3341124 *1-2 (D.Kan. 7/8/2014).  There, it was noted that the court has broad discretion in performing its gatekeeping function over the admissibility of expert testimony.  The court is bound by FED.R.CIV.P. 702 which provides:

   A witness who is qualified as an expert by knowledge,
   skill, experience, training, or education may testify
   in the form of an opinion or otherwise if:
      (a) the expert's scientific, technical, or other
   specialized knowledge will help the trier of fact to

7

understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

The court must be satisfied that the expert is qualified and that the proposed expert testimony is reliable and relevant. Bell at *2. The arguments raised by defendant here go to the reliability and relevance of Buchman's proposed testimony.[3] To determine reliability the court must decide whether the expert's reasoning or methodology can be applied to the facts in issue. Id. The court is not tied to any particular set of standards in determining reliability, but four factors have been suggested for consideration by the Supreme Court: 1) whether the theory used can be and has been tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) general acceptance in the scientific community. Id., citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-94 (1993).

Rejection of expert testimony is considered the exception, not the rule, as "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' remain 'the traditional and appropriate means of

---

[3] Regarding qualifications, Buchman is a certified public accountant and certified valuation analyst with experience in business valuation.

attacking shaky but admissible evidence.'" <u>Id.</u>, quoting <u>Daubert</u>, 509 U.S. at 596.    While the proponent of expert testimony has the burden of showing its admissibility, the proponent is not required to prove that the expert is indisputably correct.    <u>Id.</u> at *2 & *8 (interior quotations omitted).

Since many of defendant's arguments against Buchman's proposed expert testimony attack the "facts" employed in Buchman's analysis, the court must remain mindful of the Tenth Circuit's recent comment that:

> Reliability "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." <u>Manpower, Inc. v. Ins. Co. of Penn.</u>, 732 F.3d 796, 806 (7th Cir. 2013). Accordingly, a district court must admit expert testimony as long as it is based on a reliable methodology.  It is then for the jury to evaluate the reliability of the underlying data, assumptions, and conclusions.  <u>Id.</u> at 806-08.

<u>In re Urethane Antitrust Litigation</u>, 768 F.3d 1245, 1263 (10th Cir. 2014); see also, <u>U.S. v. Lauder</u>, 409 F.3d 1254, 1264 (10th Cir. 2005)(<u>Daubert</u> generally does not regulate the facts or data used by an expert when forming an opinion); <u>Smith v. Ford Motor Co.</u>, 215 F.3d 713, 718 (7th Cir. 2000)(reliability of factual underpinnings for an opinion are factual matters to be determined by trier of fact).   This is in accord with the comments in the Advisory Committee Notes to the 2000 Amendments

to Rule 702.   There it states that Rule 702(b)'s requirement that opinions be supported by "sufficient facts or data" calls for "a quantitative rather than qualitative analysis."   See also U.S. v. Crabbe, 556 F.Supp.2d 1217, 1223 (D.Colo. 2008)("the Court does not examine whether the facts obtained by the witness are themselves reliable – whether the facts used are qualitatively reliable is a question of the weight to be given the opinion by the factfinder, not the admissibility of the opinion.").

Nevertheless, while an expert typically assumes some set of facts which may originate from one party as opposed to another (see Packgen v. Berry Plastics Corp., 2014 WL 4545493 *17 (D.Me. 2014)), the data may cannot be derived from a manifestly unreliable source.   Power Integrations, Inc. v. Fairchild Semiconductor Inter., Inc., 711 F.3d 1348, 1373 (Fed.Cir. 2013) cert. denied, 134 S.Ct. 900 (2014); see also, Nacchio, 555 F.3d at 1241 (a court's reliability questions may concern the expert's data).

C.   Defendant's claim that Buchman does not accept responsibility for the conclusions of his report is a matter for cross-examination.

Citing a cover letter to Buchman's report, defendant contends that Buchman's proposed testimony should be barred because he does not claim responsibility for his report. Buchman has indicated in his deposition that his cover letter

10

was incorrectly phrased.   The court believes defendant's argument is a matter for cross-examination and does not provide proper grounds to strike Buchman's proposed testimony.

D.  Buchman's mileage analysis will not be excluded at the present time.

Buchman attempted to measure plaintiff's loss of income by conducting a mileage analysis of a vehicle which is critical in plaintiff's nursery business.   Buchman calculated an average revenue rate per mile and then applied that figure to the reduction in the use of the vehicle after plaintiff's injuries.

The vehicle is called a tree spade.   Plaintiff uses the tree spade to dig up and transplant trees.   Plaintiff purchased the tree spade in 2004 when it had 250 miles on it.   Buchman performed his analysis in 2013 when the tree spade had 63,151 miles on it.   Plaintiff's accident was at the end of October 2011.   Buchman determined a mileage figure at the time of plaintiff's accident on the basis of information supplied by plaintiff.   Buchman calculated a revenue-per-mile average from revenue and mileage totals for the years following plaintiff's injury.

Defendant contends that Buchman's mileage analysis is unreliable because:  there is nothing to verify plaintiff's mileage information; there are too many unaccounted-for factors which would affect a revenue-per-mile average from year to year;

and because Buchman's revenue-per-mile averages (which were calculated from post-injury numbers) do not correlate with the revenue-per-mile averages for the years prior to plaintiff's accident.

The court finds that these attacks are not sufficient to exclude Buchman's mileage analysis because they relate more to the data used in the analysis as opposed to the methodology itself. This may be a fine line to draw in this instance, but we draw support for this holding from Manpower, Inc. v. Insurance Co. of Pa., 732 F.3d 796 (7th Cir. 2013), a case which the Tenth Circuit recently cited with approval in In re Urethane, supra.

In Manpower, an expert attempted to calculate a business interruption loss. The expert was criticized for the data he used to calculate lost revenue. The business interruption loss was caused by a partial collapse of an office building. The expert chose an estimated growth rate of 7.76% to project total revenues. This figure was based upon revenue for a five-month period immediately before the collapse as compared to the revenue for the same five months of the previous year. There was a negative growth rate, however, for a six-year period of time and the growth rate for an 18-month period was 3.8%. The expert was criticized for relying too heavily upon the word of the business managers and for not performing an economic

analysis of the factors that affected revenue growth. The district court accepted this criticism and excluded the expert's opinion, finding that the growth rate was based on assumptions rather than reliable principles and methods.

In spite of the leeway granted district courts in making these decisions, the Seventh Circuit overturned the district court's holding on the grounds that the district court usurped the role of the jury by scrutinizing "the quality of the expert's data and conclusions, rather than the reliability of the methodology the expert employed." 732 F.3d at 806.

The situation is similar in this case. Defendants do not criticize the logic of the mileage analysis as much as the data inputs. Plaintiff claims he has not been able to work as much because of his injuries from the accident. Allegedly, this has been reflected in the mileage travelled by the tree spade. Plaintiff's business makes revenue using the tree spade to dig up, transport and transplant trees. Therefore, determining the revenue made each year and dividing that figure by the mileage travelled by the tree spade that year provides a revenue average-per-mile. That average can be used to estimate an income loss by multiplying the average revenue-per-mile by the estimated reduction in miles driven because of plaintiff's injuries. This may not be the best methodology for estimating plaintiff's business loss. But, plaintiff's burden is not to

13

present the best methodology, or an indisputably correct methodology, only a reliable methodology. Bell, 2014 WL 3341124 at *11 (citing Util. Trailer Sales v. MAC Trailer Mfg., Inc., 267 F.R.D. 368, 371 (D.Kan. 2010)). Defendant's argument for using different revenue-per-mile estimates and its claim that Buchman omitted consideration of factors affecting SVN's revenue, are matters which should be raised on cross-examination so that the jury can consider what weight to give to Buchman's opinion. There is no reason to find that Buchman did not have the expertise to apply the methodology or that the methodology was not reliable and relevant for reasons other than the data and assumptions used in applying the methodology.

We acknowledge defendant's point that Buchman has not provided evidence that this type of mileage analysis is generally accepted or has been subjected to peer review and publication. But, these factors are not always determininative. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). We believe this is especially so where the criticism is based more upon data inputs than the methodology itself and where the methodology has been constructed to estimate revenue loss in a small and specialized business.

In sum, the court finds no grounds as the record currently stands to bar presentation of the "mileage analysis" opinion. But, this holding does not bar reconsideration at the time of

14

trial when the record regarding the data used for the analysis is more complete.

E.  Buchman's missed customer jobs analysis will not be excluded at the present time.

Buchman has attempted to estimate plaintiff's lost income by calculating the number of "missed jobs" plaintiff was unable to perform because of his injuries.  He calculated this number by examining phone logs of calls received by SVN which were not returned.  He assumed, on the basis of information received from plaintiff, that 80% of the calls missed would have been converted into revenue-producing business if plaintiff had been able to respond to the calls.  Defendant does not deny that plaintiff lost income if he was unable to respond to calls from potential customers with proposed projects that plaintiff could have performed but for his injuries.  But, defendant contends that Buchman's analysis does not reliably translate missed calls into lost income for the following reasons:   1) the 80% conversion rate is an untested assumption unsupported by any hard data; 2) Buchman should not assume that a caller would have accepted plaintiff's quote for a job or that plaintiff could have performed the proposed project barring his injuries; 3) Buchman did not check to see whether plaintiff may have performed the work because the customer called again or plaintiff made contact with the customer; and 4) Buchman did not

calculate the costs to the business if plaintiff had been able to perform the jobs.   Plaintiff has responded that Buchman relied upon information supplied by plaintiff.   Plaintiff asserts that he has experience with his business in a small community and that he reviewed his records to determine a conversion rate and to provide other information necessary to the "missed jobs" analysis.   Plaintiff further asserts that some of the allegedly overlooked costs to the business, such as labor costs, are not relevant to Buchman's analysis because plaintiff did not charge his business for plaintiff's labor.

Again, defendant's argument is not so much an attack upon methodology as an attack upon the data and/or assumptions which underlie the "missed jobs" analysis.   If Buchman can determine a number of jobs plaintiff was unable to perform because of his injuries, this should provide a measure of lost income. Defendant's issues with the "missed jobs" analysis relates mainly to the information relied upon to draw conclusions.

We reject defendant's arguments because experts are not barred from assuming facts if it is clear that the expert is assuming facts and not confirming the facts being assumed.   See Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1080 n.4 (10th Cir. 2006); see also, Crabbe, 556 F.Supp.2d at 1224 (reliance upon assumptions does not preclude admission under Rule 702).   Furthermore, as we have already said, Rule 702 is

16

concerned more with assuring a sufficient quantity of data as opposed to the quality of data.

We acknowledge that a false or unproven assumption may be considered an example of an absence of data – a quantity issue. On the other hand, if the assumption is assailed for being based merely upon the personal experience of a party or limited record-keeping, it may be considered a question of data quality. This is another fine line to draw. At the present time, the court believes defendant's arguments are more an attack upon the quality of the data supporting the "missed jobs" analysis, and that such attacks should be considered at trial where they can be fleshed out through testimony and cross-examination.

Upon review of the materials before the court and being mindful that rejection of expert testimony is generally the exception rather than the rule, the court shall deny defendant's motion as to the "missed jobs" analysis without prejudice to a reconsideration of the matter at trial when the record regarding the data behind the analysis is more complete.

F.   Buchman's future earnings opinion shall be excluded as of this time.

Buchman has calculated plaintiff's future earnings loss based upon a doctor's opinion that plaintiff has a 25% functional disability as a result of his injuries. Buchman has determined that two employees could perform the different job

17

functions plaintiff performed prior to his injuries at a cost of $103,000 per year. Buchman took 25% of that cost to determine plaintiff's lost future income, upon the premise that plaintiff has a 25% functional disability.

Defendant argues that this opinion should be excluded by the court because the functional disability rating is not related to any vocational analysis of plaintiff's employment and has no correlation to earning capacity. Defendant notes that plaintiff has been able to use the tree spade and perform other aspects of his job since he was injured.

The court believes defendant's argument is more of a methodological attack than the prior arguments discussed in this opinion. The attack relates to whether plaintiff's functional disability rating is a measure of plaintiff's future earning capacity. If the relationship is tenuous, then an opinion of future income loss which is based upon multiplying that measure against the replacement cost of plaintiff's labor appears unreliable because of a shortage of data correlating plaintiff's functional disability rating to his ability to perform his employment. Case authority in the Kansas workers compensation field suggests a significant distinction between functional disability ratings and work disability ratings. See Anderson v. Kinsley Sand & Gravel, Inc., 558 P.2d 146, 149-50 (Kan. 1976); Desbien v. Key Milling Co., Inc., 588 P.2d 482, 485 (Kan.App.

18

1979).  The court shall leave the record open for further proof from plaintiff.  But, unless persuasive proof or contrary authority is presented, the court shall exclude Buchman's future earnings opinion.

G.  <u>Buchman's tree loss analysis shall be excluded at the present time</u>.

Buchman estimated that plaintiff has lost the sales value of tree crops which were planted or would have been planted and properly cared for, except that plaintiff was injured and could not perform the required labor.  His opinion considers the potential tree crops in 2010, 2011, 2012 and 2013.  He assumes: that there were 300 trees in each year's crop; that 8% of the trees would have died; and that half of the surviving trees would have sold as ball & burlap trees for $550 per tree and half of the trees would have sold as spaded trees for $1200 per tree.  Apparently, plaintiff is the source Buchman relied upon for many of his factual assumptions.

Defendant has supplied a statement of facts in support of its motion in limine.  Plaintiff has not disputed many of the facts relating to the assumptions behind Buchman's tree loss analysis.  These undisputed facts indicate that there are many problems with the assumptions.  Plaintiff planted a tree crop in 2011, but Buchman assumed he did not.  Plaintiff did not plant tree crops in 2012 and 2013, but the reason for this does not

appear linked to his injuries. Plaintiff has not kept an updated inventory of the trees he purchased and planted for his nursery business or the trees that have died. Plaintiff cannot assign a cause of death to trees that were planted in 2010 and 2011. In addition, Buchman did not consider the cost of replacing dead trees, which would have mitigated the loss of income from a tree that died before reaching the age assumed for sale.[4]

Evidence of tree loss would have relevance to plaintiff's claims of income loss, assuming that the tree loss was the natural and probable consequence of plaintiff's injuries. And, once again, it may be asserted that defendant's argument presents an issue of data quality, not methodology. But, the scarcity of data here seems undisputed and the questionable assumptions are so significant that the court believes that a line has been crossed. It appears that the tree loss analysis lacks sufficient reliable data to be helpful to a jury and also is potentially confusing to a jury. Again, the court will leave the record open. But, without the presentation of different evidence or authority, the court shall exclude Buchman's tree loss analysis.

---

[4] The court is not suggesting that expert opinions on damages must always make account for mitigation. But, this is another factor which leads the court to doubt whether the tree loss analysis would be helpful to a jury's consideration of damages.

IV. CONCLUSION

In conclusion, defendant's motion for partial summary judgment (Doc. No. 89) shall be denied and defendant's motion to exclude the testimony of Chet Buchman (Doc. No. 87) shall be granted in part and denied in part consistent with the text of this opinion. In addition, plaintiff's motion for extension of time to file a response to defendant's motion to exclude testimony (Doc. No. 96) shall be granted. Defendant's motion for leave to file an amended memorandum in support of its motion to exclude testimony (Doc. No. 93) shall be granted. And, defendant's motion for extension of time until November 17, 2014 to file a dispositive motion (Doc. No. 86) shall be granted.

**IT IS SO ORDERED.**

Dated this 29th day of January, 2015, at Topeka, Kansas.


**s/RICHARD D. ROGERS**
Richard D. Rogers
United States District Judge